No. 81,427·

In the Matter of RUSSELL W. DAVISSON, *Respondent*.

(969 P.2d 892)

Opinion filed December 11, 1998.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Daniel J. Sevart*, of Sevart & Sevart,· of Wichita, argued the cause for the respondent, and *Russell W. Davisson*, respondent, argued the cause pro se.

*Per Curiam*: This· is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Russell W. Davisson, of Wichita, an attorney admitted to the practice of law in the state of Kansas.

The formal complaint filed against respondent contained six counts, alleging violations of MRPC 1.1 (1998 Kan. Ct. R. Annot. 279); MRPC 1.3 (1998 Kan. Ct. R. Annot. 288); MRPC 1.4(a) and (b) (1998 Kan. Ct. R. Annot. 296); MRPC 3.4(c) (1998 Kan. Ct. R. Annot. 357); and MRPC 8.4(c) (1998 Kan. Ct. R. Annot. 386). Respondent filed an answer.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on February 24, 1998, in Topeka, Kansas. Respondent appeared in person and by his counsel, Daniel J. Sevart.

The present complaint arises out of respondent's being retained to represent Rowana Willrich, now Rowana Gulley, in several matters evolving out of an automobile accident. The panel made the following findings of fact:

"3. On August 15, 1992, Gulley had an automobile accident at Joe's Car Wash, 206 North Seneca, Wichita, Kansas. She made a left turn across traffic into the car wash driveway and collided with a concrete abutment located on the property of Joe's Car Wash. Gulley was hurt, the Blazer was damaged and property at Joe's Car Wash was damaged, as well. The Blazer was towed by Arrow Wrecking Service and left at their storage facility. [Gulley] made a claim with her own insurance company, Farm Bureau, to pay for property damage. When Farm Bureau learned

there was a discrepancy in the vehicle identification numbers on the insurance application and on the actual vehicle, it denied coverage and refused to pay for the property damage, although it did pay PIP benefits and some costs of a rental vehicle. Gulley retained Davisson to represent her in all matters concerning her vehicle and the personal injury she suffered as a result of the accident.

"4. When Gulley did not make any more payments on the promissory note due on the Blazer, that note was recoursed back to Scholfield Brothers, Inc., the automobile dealer which sold the car to Gulley. In 1993, Scholfield Brothers, Inc. sued Gulley in a civil action entitled *Scholfield Brothers, Inc. v. Rowana W. Willrich*, Case No. 93 C 311, filed in the District Court of the Eighteenth Judicial District of Kansas (the Scholfield lawsuit). Davisson entered his appearance on behalf of Gulley and filed a counterclaim against Scholfield, contending that the Blazer was defective due to acceleration problems and that this defect caused the accident.

"5. On October 21, 1993, Scholfield Brothers, Inc. filed its Pretrial Questionnaire. The questionnaire alleges that all of the defendant's claims and defenses should be barred as a result of the defendant's failure to cooperate in discovery. Pages 3 and 4 of the Pretrial Questionnaire contain the following allegations:

. . . .

'On or about August 12, 1993, Scholfield filed a motion for extension of time to conduct discovery or in the alternative [for] dismissal of defendant's claims. The motion came on for hearing before the Honorable Ron Rogg on August 20, 1993. At the hearing of said motion, the Court entered orders which required the defendant to submit her response to Scholfield's Statement of Monetary Damages, interrogatories, and production of documents by August 23, 1993. The Court further ordered that defendant submit an automotive expert witness report on or before September 15, 1993, or no expert would be allowed to testify, the second time which this date has been extended. In addition, the jury trial scheduled in this case was continued to December 7, 1993. To date, defendant has not responded to Scholfield's discovery requests despite being ordered to do so, nor has defendant submitted an automotive expert witness report.'

. . . .

"6. The Scholfield lawsuit proceeded to bench trial on December 21, 1993. Because there was no evidence to support the claim that there was a defect in the Blazer which caused the accident, the judge rejected the counterclaim and entered judgment against Ms. Gulley in the amount of $13,360.64.

"7. Following the trial, Davisson promised Gulley that he would file a lawsuit against Farm Bureau to secure payment for the property damage to the Blazer (the Farm Bureau lawsuit). That lawsuit was not filed until November 3, 1995.

"8. During the time from December 27, 1993, to November 3, 1995, Gulley and her husband, Ed Gulley, continued to ask about the status of the lawsuit against Farm Bureau. Davisson repeatedly told them the lawsuit was on file, told Mr. Gulley that he would send out copies of the lawsuit to him in July 1995, reported that the copies must have been lost in the mail, stated to Mr. Gulley that

Farm Bureau was cutting a check, that he did not know the amount, and that he would call Mr. Gulley when it had arrived, and then told Mr. Gulley that perhaps the check was lost in the mail and that he wold follow up on it immediately.

"9. In truth, the Farm Bureau adjuster had made his last contact with Davisson on February 28, 1995, when he wrote to Davisson and made an offer to settle the property damage claim in the amount of $2982.71. This offer was never communicated to Gulley.

"10. Davisson failed to communicate with Gulley concerning the placement of the Blazer at Arrow Wrecking after the accident. The Blazer remained at that location from the date of the accident with a result of substantial storage charges against the vehicle and the vehicle was eventually disposed of. The Gulleys received a certified letter from Arrow Wrecking regarding the vehicle and they gave that letter to Davisson who told them he would take care of it. He never did.

"11. Davisson failed to communicate with his client or make any attempt to provide for the payment of medical expenses and all of the rental expenses which arose as a result of the accident, with the result that said expenses had never been provided for.

"12. Davisson never caused a summons in the Farm Bureau lawsuit to be issued or service or process to be made."

Respondent does not take exception to the final hearing report and stipulates to the following violations:

"1. Violations of Model Rule 1.3 regarding lack of due diligence in that he did not exercise due diligence in (a) completing discovery responses in providing a statement of monetary damages in a case brought by Scholfield Brothers, Inc., against Rowana Gulley, and (b) getting a lawsuit on file for Ms. Gulley against Farm Bureau Insurance in a timely manner.

"2. Violation of Model Rule 1.4 regarding communication, in that he did not adequately communicate with his clients in both the suit filed by Scholfield Brothers against Gulley and in the suit by Gulley against Farm Bureau Insurance.

"The panel consequently finds, by clear and convincing evidence, that Respondent committed these violations as stipulated."

The hearing panel consequently concluded that respondent violated MRPC 1.3 (due diligence) and 1.4 (communication). The panel considered the following aggravating factors:

"Prior disciplinary offenses. Respondent received an informal admonition in 1987 for lack of diligence and, in *In re Davisson*, 243 Kan. 167 [, 753 P.2d 1290] (1988), Respondent received public censure for neglect of a legal matter entrusted to him.

"Substantial experience in the practice of law. Respondent has been practicing law for over 20 years."

The panel found in mitigation the following:

"Absence of a dishonest or selfish motive.

"Personal or emotional problems. Respondent's psychologist, Dr. Theodore Moeller, testified that he has been treating Respondent since October 1996 for significant depression. Respondent's physician prescribed Prozac, which Respondent takes on a regular basis, as prescribed. Respondent attends a group therapy session with Dr. Moeller once each week. Dr. Moeller testified that, with continued treatment and medication, and with supervision and structure such as attorney David Arst has been providing, Respondent could continue in the practice of law.

"Effort to make restitution or rectify the consequences of the misconduct. In January 1996, Respondent agreed to end his relationship with the lawyers in his office as of the end of the lease period, which was June 1996. Respondent opened a new office by himself in July 1996, limiting his practice to bankruptcy, contract, simple incorporation and wills cases. He decided to accept no more cases requiring litigation. Respondent began to see Dr. Moeller. In January 1997, at the suggestion of the Disciplinary Administrator's office, Respondent began working under the supervision of David Arst, another Wichita attorney. In addition, Respondent has paid $14,000 of a $20,000 settlement to the complainant Rowana Gulley, in response to a lawsuit she filed against Respondent over the misconduct discussed herein.

"Mental disability, including alcoholism or drug abuse, when:

(1) there is medical evidence that the respondent is affected by a chemical dependency;

(2) the chemical dependency caused the misconduct;

(3) the respondent's recovery from the chemical dependency is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

"In this case, Dr. Moeller, Respondent's psychologist, testified that, in his opinion, the first two prongs of this test are met. As for the third and fourth prongs of this test, he testified that Respondent is in the process of recovery and rehabilitation, but that recovery was not yet complete and that recurrence of the misconduct would be unlikely if he continues with treatment."

The court, having considered the record, the report of the hearing panel, and arguments of counsel, concludes that the findings of fact are supported by clear and convincing evidence. Respondent takes no exception to the findings of fact. We also conclude that the panel's conclusions of law are supported by the findings and adopt the findings and conclusions of the panel.

The panel recommends that respondent be placed on 2 years of supervised probation, limit his practice, maintain malpractice in-

surance, and satisfy Gulley's judgment against him. The Disciplinary Administrator also recommends supervised probation. We adopt the recommendation of the panel.

IT IS THEREFORE ORDERED that imposition of discipline against respondent Russell W. Davisson be suspended and that he be placed on supervised probation for a period of 2 years from the date of this order.

IT IS FURTHER ORDERED:

(1) Attorney David Arst, of Wichita, will supervise respondent's probation and supervise his practice for a period of 2 years from the date of this order.

(2) Arst shall be acting as an officer of the court and as an agent of the court as supervisor of probation in monitoring the legal practice of respondent.

(3) Arst shall be afforded all immunities granted by Supreme Court Rule 223 (1998 Kan. Ct. R. Annot. 264) during the course of his activities as directed by this order. Respondent will allow Arst access to his files, his employees, his trust account, and his doctors.

(4) Arst shall review quarterly the actual files of respondent; respondent will limit his practice to areas in which Arst feels respondent is competent to practice; respondent will maintain malpractice insurance; and respondent will pay and satisfy the judgment against him by Ms. Gulley.

(5) Respondent shall continue treatment for his depression. Arst shall keep the Disciplinary Administrator informed of respondent's progress in such a manner as the Disciplinary Administrator shall request.

(6) Respondent shall also furnish all reports as requested by the Disciplinary Administrator.

IT IS FURTHER ORDERED that in the event respondent fails to abide by the conditions set forth herein, a show cause order shall forthwith issue to respondent, and this court will take whatever disciplinary action it deems necessary without further formal proceedings.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.